# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00086-CR

**Jose Lopez, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE DISTRICT COURT OF CALDWELL COUNTY, 421ST JUDICIAL DISTRICT NO. 2009-261, HONORABLE TODD A. BLOMERTH, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

The appellant, Jose Lopez, was indicted for intentionally and knowingly causing serious bodily injury to a child by striking him with a vase. *See* Tex. Penal Code § 22.04(a)(1) (serious bodily injury to a child), (e) (offense under Subsection (a)(1) is first-degree felony when conduct is committed intentionally or knowingly). A jury found Lopez guilty and sentenced him to ten years in prison. In three issues, Lopez argues that (1) the evidence is insufficient to support the jury's verdict of guilt, (2) the trial court did not have authority to enter a judgment for the first-degree felony of serious bodily injury to a child because of errors in the charge and the verdict form, and (3) the trial court then erred by charging the jury for the range of punishment applicable to a first-degree felony. We will affirm the conviction.

## BACKGROUND

J.S., a six-year-old boy, and his grandmother, Maria Sanchez, were visiting Lopez, Sanchez's boyfriend, for a few days at Lopez's home in Lockhart in early July 2009.[1]  J.S. and Sanchez lived in San Antonio at that time.  Sanchez testified that on the evening of July 6, she and Lopez argued, and during the argument, Lopez picked up a tequila bottle being used as a vase, cursed, and threw the bottle at J.S., who was lying on the floor nearby.  The tequila bottle hit J.S. in the mouth.  J.S. began crying and screaming, and his mouth was bleeding profusely.  Sanchez took J.S. into the bathroom to run water over his mouth.  She put a towel over his mouth and took him back to the bedroom, but the bleeding did not stop.

Sanchez testified that she was unable to leave the house with J.S. to get medical help that night because Lopez, who had been drinking, had lain across the threshold of the room and passed out, preventing her from opening the bedroom door to leave the room.  In addition, Sanchez, who is an undocumented immigrant, testified that Lopez had told her that if she called the police, he was going to call immigration and have her deported.  Sanchez, who did not have a car, left the next day with J.S. to get help.  She walked until she found a church with a thrift store inside.  Two women, who were strangers to Sanchez, drove her and J.S. to San Antonio because Sanchez wanted to take him to a hospital in the city where they lived.

J.S. was hospitalized for three days. Dr. Vivian Carlin, one of J.S.'s treating physicians at the hospital, testified that after J.S. arrived at the hospital on the night of July 7, he immediately received intravenous antibiotics and fluids.  A forensic nurse examiner, Edward Russell, testified

---

[1] Sanchez is raising J.S. as her son.  Her daughter is J.S.'s biological mother.

2

that shortly before 1:00 a.m. on July 8, he conducted a forensic medical exam on J.S., which is the hospital's standard procedure in cases involving physical abuse. As part of the forensic exam, Russell interviewed J.S. separately from Sanchez, conducted a full physical exam, and documented J.S.'s injuries both in writing and with photographs. He also interviewed Sanchez. Russell provided the information he collected to both the emergency room physician and the forensic physician.

Dr. Nancy Kellogg, who is board-certified in pediatrics and child abuse, reviewed Russell's report and the photographs of J.S.'s injuries. As medical director of the preventive-nurse program at the hospital, Dr. Kellogg regularly reviews the information collected by the forensic nurses during their patient exams to determine the likelihood that the documented injuries are related to child abuse. She testified that she has reviewed thousands of cases and she has testified many times as an expert witness on child abuse. Dr. Kellogg testified that two of J.S.'s bottom teeth had been knocked out of his gum, and he had multiple cuts and abrasions on his upper lip. One of J.S.'s lower teeth had become jammed so far up into his upper lip that it was only visible when the lip was x-rayed. Dr. Kellogg opined that J.S.'s injury was "an abusive inflicted injury and it was severe." Dr. Kellogg testified that J.S.'s injury was not consistent with a normal childhood fall at that age nor was it the type of injury she would expect to see from an object falling off a shelf the height of the one in Lopez's room, even accounting for the weight of the tequila bottle if it was filled with water and flowers. In her medical opinion, more force was required to inflict J.S.'s injury—the bottle had to have been "thrown hard."

Dr. Carlin testified that J.S. had plastic surgery to remove the tooth and close the largest laceration on his lip. J.S. has scarring at the surgery site, and it is possible the functionality

3

of his permanent teeth will be impaired. Dr. Kellogg testified that scarring that remained after a year and a half would not heal itself. Sanchez testified that J.S.'s gums continue to hurt, he has constant headaches, and he is frequently afraid. Both Dr. Carlin and Dr. Kellogg opined that J.S.'s injury constitutes "serious bodily injury" as defined by the Penal Code. *See* Tex. Penal Code § 1.07(46) (defining "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ").

Russell had contacted the Lockhart Police Department to notify them of the possible crime. The sergeant who took the call contacted the San Antonio Police Department and asked for assistance with obtaining statements and evidence. A San Antonio Police Department detective went to the hospital and took photographs and collected the tequila bottle, which Sanchez had brought with her. A different police officer, Onofre Serna, went to the hospital to speak with Sanchez. He observed J.S.'s injuries and wrote up a report, which was sent to the Lockhart Police Department.

A Lockhart Police Department detective, Mike Nichols, investigated the case. After he located Sanchez, he set up a forensic interview for J.S. at a child-advocacy center in San Marcos. Detective Nichols testified that it is the Department's procedure to use a forensic interviewer anytime that it is necessary to interview a child for a case. The forensic interviewer, Melissa Rodriguez, conducted an interview with J.S. in Spanish. During the interview, J.S. told her about how he had been injured. Nichols interviewed Sanchez on the same day. Based on those interviews, Nichols obtained a warrant for Lopez's arrest for the first-degree felony of serious bodily injury to a child. Lopez was arrested after he reported to the district clerk's office. He came to the office to deny that

4

he was the person named in the warrant, but he eventually admitted to the police that he was the person named.

Lopez was indicted for "intentionally and knowingly, by act, caus[ing] serious bodily injury to [J.S.], a child . . . by then and there striking the [child] with . . . a vase." The jury found Lopez guilty and sentenced him to ten years in prison.

## DISCUSSION

### *Sufficiency of evidence to support conviction*

In his first issue, Lopez argues that the evidence is insufficient to support the conviction, asserting that the J.S.'s testimony about the incident was inconsistent, and this inconsistency means that there is only some evidence to support the conviction, not sufficient evidence. Lopez contends that because J.S. testified that he was injured when the tequila bottle fell on him and also testified that Lopez threw the bottle at him, the jury's finding of guilt is not a rational finding.

Due process requires the State to prove beyond a reasonable doubt every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (determining that *Jackson* standard "is the only standard that a reviewing court should apply" when examining sufficiency of evidence). When considering the sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899.

5

Under this standard, it is the jury's duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts," and we assume that the jury did so in a manner that supports the verdict. *Jackson*, 443 U.S. at 319; *Laster v. State*, 275 S.W.3d 512, 522 (Tex. Crim. App. 2009). When analyzing sufficiency, we then "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007).

We assess both direct and circumstantial evidence under this same standard. *Laster*, 275 S.W.3d at 517-18. We must defer to the jury's determination of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. We presume that the factfinder resolved any conflicting inferences supported by the record in favor of the prosecution and therefore defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). "Our role on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally[;] . . . . we will uphold the verdict unless a rational factfinder must have had reasonable doubt as to any essential element." *Laster*, 275 S.W.3d at 517-18.

In a sufficiency review, the essential elements of the offense are those of a hypothetically correct jury charge for the case—one that accurately sets out the law and adequately describes the offense for which the defendant was tried without increasing the State's burden of proof or restricting the State's theories of liability. *Hooper*, 214 S.W.3d at 14. To find Lopez guilty of serious bodily injury to a child, the jury must have determined beyond a reasonable doubt that Lopez intentionally or knowingly, by act, caused serious bodily injury to the child, J.S. *See* Tex.

6

Penal Code § 22.04(a)(1).  In this case, the only element that Lopez contends was not proved by a reasonable doubt is whether he committed the act—i.e., threw the tequila bottle—at J.S.

Lopez focuses on a portion of J.S.'s testimony in which J.S. agreed with defense counsel when counsel asked if he was injured when the bottle fell from the shelf and struck him in the mouth.  Defense counsel had previously attempted to establish whether J.S. remembered his interview with Rodriguez by asking J.S. whether he remembered talking to anyone, especially "a lady," about what happened on the night he was injured.  J.S. testified that he did not remember talking to anyone about the events of that night other than his mother, but defense counsel continued asking J.S. about whether he remembered telling the lady about particular details of that night.  The full portion of the testimony relied on by Lopez to show inconsistency in J.S.'s testimony reads as follows:

Q.      Okay.  [J.S.], were you lying on the floor?

A.      Yes.

Q.      And did the bottle fall off the shelf above the TV?

A.      Yes.

Q.      And did it strike you in your mouth?

A.      Yes.

Q.      And did that injure you?

A.      Yes.

Q.      Okay.  And you've testified that someone threw this bottle at you?

A.      Yes.

7

Q.    That didn't happen, did it?

A.    No.

Q.    Okay.  Somebody told you to say that, didn't they?

A.    No.

Q.    Then why did you say that someone threw this bottle at you?

A.    Yes, somebody did.

Q.    Huh?  Excuse me?

A.    Somebody throw the bottle at me.

        THE COURT:  "Somebody threw the bottle at me"?  Is that what you said,
sir?

        THE WITNESS:  (Nods affirmatively.)

Defense counsel further tried to establish that the bottle accidentally fell instead of being thrown

with this series of follow-up questions:

Q.    (By [defense counsel])  Is what you're saying, that the bottle fell off the shelf
        above the TV and hit you in the mouth while you were lying on the floor?

A.    Yes.

Q.    And did that happen when [Lopez] was reaching for the remote?

A.    Yes – I mean, no.

Q.    Okay.  I know – is it yes or is it no, [J.S.]?

A.    No.

Q.    Okay.  Do you remember telling someone that that's what happened?

8

A.     No.

Q.     Okay.  And did you tell someone that that's what happened?

A.     No.

In a later portion of J.S.'s testimony, defense counsel revisited the subject of whether the bottle had

been thrown at J.S.:

Q.     (By [defense counsel]) Do you remember telling someone that the bottle was
       thrown at you like this (indicating)?

A.     Uh-uh.

Q.     You never told anyone that?

A.     Not that way.

. . . .

Q.     Like that (indicating)?

A.     Uh-huh.

Q.     Kind of like a football, right?
       And when the bottle was thrown, do you remember how it struck you?

A.     Yes.

Q.     And how was that?

A.     Like an arrow.

Q.     Excuse me?

A.     I don't know.

Q.     You don't know?  So you don't know how it hit you?

9

A. I know how it hit me.

Q. Okay. How did it hit you?

A. Hard.

Lopez argues on appeal that the inconsistency in J.S.'s testimony renders the jury's finding in this case not rational. He equates this case to the hypothetical of a convenience-store robbery that the court of criminal appeals used in *Brooks* to illustrate the proper application of the *Jackson* sufficiency standard. *See Brooks*, 323 S.W.3d at 906-07. In the court's hypothetical, the store clerk at trial identifies A as the robber, but a properly authenticated surveillance videotape clearly shows that B committed the robbery. *Id.* at 907. The court explained that while it was within the jury's prerogative to believe the store clerk and disregard the video, the jury's finding of guilt is not a rational finding when *all* the evidence is considered. *Id.*

After examining the entire record in this case, we conclude that the jury could have rationally resolved the asserted inconsistency in J.S.'s testimony in favor of the guilty verdict. The asserted inconsistency here does not rise to the level of the discrepancy between the eyewitness testimony and the videotape described in the hypothetical in *Brooks*. In this case, two factors provide a rational explanation for J.S.'s both agreeing with counsel that the bottle fell off the shelf and hit him in the mouth and testifying that the bottle was thrown at him and hit him hard: (1) he is a child, and (2) English is not his first language. J.S. was six years old at the time of his injury and seven years old at the time of trial. J.S.'s first language is Spanish. Although his English was proficient enough to allow him to testify in English at trial, Rodriguez testified that she conducts forensic interviews in the language that the child is most comfortable with, and she interviewed J.S.

10

in Spanish. Rodriguez testified that choosing the language that the child is most comfortable speaking facilitates comprehension, especially with younger children, who tend to think in their first language much more easily than in their second language. She also testified that Spanish can be a very literal language to English speakers. The jury could have rationally concluded that there was nothing inconsistent from a native-Spanish-speaking child's point of view about agreeing with counsel that the bottle fell from the shelf and hit him and also explaining that the bottle was thrown at him. The bottle had been on the shelf before it hit J.S. The difference between the bottle falling (which implies an unintentional accident) and being thrown (an intentional act) may not have been as clear to J.S. as it is to a native-English-speaking adult.

Furthermore, unlike the *Brooks* hypothetical, there is additional evidence in this case that the jury could have rationally relied upon in reaching its guilty verdict. First and foremost, Sanchez's testimony alone provides a rational basis for the jury's guilty verdict. In addition, the testimony of the forensic interviewer and the doctors who reviewed J.S.'s case also supports the verdict. Rodriguez testified that more than 200 interviews are conducted each year at the child-advocacy center, and abuse is ruled out in most cases. Only a very small percentage of cases actually become open cases, and an even smaller number of cases actually go to trial as criminal cases. Rodriguez testified that she is trained to look for signs of children being coached into making an allegation and that one sign of coaching is a child who sticks to a very basic statement and cannot provide details in response to follow-up questions. She testified that J.S. was able to provide sufficient details about how his injury occurred and that he was visibly sad when he talked about what happened to him. Dr. Carlin testified that the diagnosis of J.S.'s injury as non-accidental trauma is a diagnosis that is given if the medical history and physical exam are consistent with the

11

description provided by the patient and the patient's parent of how the injury occurred. Dr. Kellogg, a child-abuse expert, opined that the injury was an abusive one and that it was the result of the bottle being thrown with force, not falling from a shelf. Therefore, viewing *all* the evidence in the light most favorable to the verdict, we find that the evidence is sufficient to support Lopez's conviction for serious bodily injury to a child. We overrule Lopez's first issue.

### Trial court's authority to enter judgment

In his second issue, Lopez contends that the trial court had no authority to enter a judgment for the first-degree felony of serious bodily injury to a child because of errors in the charge and the verdict form. After the State and the defense rested and closed, the trial court read the jury charge aloud to the jury. The application paragraph in the charge stated that if the jury believed from the evidence beyond a reasonable doubt that on July 6, 2009, Lopez

> did then and there intentionally and knowingly, by act, cause *bodily injury* to [J.S.], a child then and there younger than 15 years of age, by then and there striking the said [J.S.] with an object, to-wit, a vase, you will find [Lopez] guilty of the offense of injury to a child as alleged in the indictment, and so say by your verdict.

(Emphasis added.) The State approached the bench immediately after the trial court had finished reading the charge (before beginning its closing argument) to inform the trial court that there was a clerical error in the charge because the word "serious" had been omitted before "bodily injury" in the application paragraph. The trial court asked if there was any objection to the correction. Defense counsel did not object, and the trial court immediately added the word "serious" to the charge. The jury had the corrected version of the charge for its deliberations.

12

After the jury began deliberating, the jury foreman sent the trial court a note stating: "The verdict of the jury document on the last page refers to 'injury to a child.' Should it read 'serious bodily injury' as is initialed on page 3[?]" When the judge informed counsel about the jury correspondence, he explained that he had responded to the jury on the same sheet of paper, "'Yes, see correction,'" and had "initialed and inserted, by way of a car[e]t, serious bodily injury in the verdict, Count 1." He asked counsel for both sides whether they objected to either his (1) correcting the verdict form or (2) sending the corrected form back to the jury instead of bringing them out and reading it to them. Neither side objected.

When the jury returned with a unanimous verdict, the trial judge began to read the verdict and realized that rather than inserting the words "serious bodily" before the word "injury" as he intended when correcting the verdict form, he had only inserted the word "serious." During a bench conference on the record, the trial court asked counsel if there was any confusion or if they wanted him to send the jury panel back in. Neither side had a problem with the verdict as it was received, and defense counsel agreed that the verdict was understood by him to be "serious bodily injury." After the conference, the trial court continued reading the verdict in open court and read the verdict to be that Lopez was guilty of "'serious bodily injury as alleged in the indictment.'" The trial court asked the jury to raise their hands if this was their verdict. The jury complied. Neither side requested that the jury be polled. The trial court further asked the jury foreman whether it was the jury's understanding "that this was serious bodily injury, even though the Court failed to put 'bodily' in there in the verdict form." The foreman agreed that the jury understood its verdict to be guilty of serious bodily injury. The trial court noted that no objection was made and the jury verdict was received.

13

The trial court had an additional conference with counsel on the record after the verdict was received, but before the jury was charged on punishment, to discuss whether any further written correction needed to be made to the jury verdict sheet. Both sides agreed with the court that nothing further needed to be done because the verdict form stated "as alleged in the indictment," and the indictment included the words "serious bodily injury" to a child. The judgment states that Lopez was convicted of the first-degree felony offense of injury to a child.

Lopez argues on appeal that the jury did not receive a verdict form authorizing a verdict for the first-degree felony of injury to a child by causing serious bodily injury.[2] He contends that "[a]bsent a jury verdict of serious bodily injury, the only offense authorized by the verdict is that of injury to a child by causing bodily injury," which is a third-degree felony. *See* Tex. Penal Code § 22.04(a)(1)-(3) (listing offenses for causing serious bodily injury; serious mental deficiency, impairment, or injury; or bodily injury). Therefore, Lopez asserts, the trial court did not have authority to enter a different judgment than the one called for by the jury's verdict.

In this case, the trial court did not receive a particular verdict from the jury and then enter a different judgment than was called for by the verdict, as Lopez contends. Instead, after the trial court had corrected a clerical error in the charge before the jury began deliberations, the jury itself realized during its deliberations that the offense described in the verdict form was inconsistent

---

[2] Lopez argues in his opening brief that the jury was not properly charged in addition to not being provided with a verdict form authorizing a verdict for the first-degree felony offense of causing serious bodily injury to a child. In his reply brief, Lopez clarifies that he is not complaining of error in the jury charge; his challenge on appeal is only to the trial court's jurisdiction and authority to enter a judgment for an offense different from the judgment called for by the verdict.

14

with the offense described in the charge and corresponded with the trial court to find out whether the verdict form should be worded the same as the charge. The trial court answered the jury affirmatively, but inadvertently made a clerical error when correcting the form, as evidenced by the judge's description to counsel of the correction that he thought he had made to the form. As soon as the jury returned and the judge realized his error, he conferred with counsel for both sides, who agreed that there was no confusion and that the jury did not need to be sent back in. The trial court read the offense described in the verdict as he had instructed the jury it should be written (i.e., "serious bodily injury") and informed the jury of his mistake. The jurors confirmed that they intended their verdict to be that Lopez was guilty of serious bodily injury to a child.

"A verdict must be certain, consistent, and definite. It may not be conditional, qualified, speculative, inconclusive, or ambiguous." *Reese v. State*, 773 S.W.2d 314, 317 (Tex. Crim. App. 1989). It is the trial judge's duty to reject an insufficient, unresponsive, incomplete, or informal verdict, call the jury's attention to the problem, and have the problem corrected either with the jury's consent or by sending them out to reconsider the verdict. Tex. Code Crim. Proc. art. 37.10(a); *Reese*, 773 S.W.2d at 317. That is precisely what the trial judge did here. The trial judge discussed the mistake and its correction in open court with the members of the jury. Lopez did not object to either the trial court's first attempt to correct the verdict form based on the jury correspondence or the trial court's second correction of the verdict form in open court after the judge's realization that he had omitted the word "bodily" in his first correction attempt; nor did Lopez ever request a jury poll. *See Reese*, 773 S.W.2d at 318. We hold that the trial court did not err by calling the jury's attention to the clerical error in the verdict and correcting the problem with the jury's consent. *See id.*

15

Furthermore, the trial court's decision not to write the word "bodily" on the verdict form after orally correcting the verdict with the jury's consent in open court does not render the judgment entered by the court different from that called for by the verdict.[3] It is true, as Lopez asserts, that a verdict must be in writing and must be agreed upon by all members of the jury. *See* Tex. Code Crim. Proc. arts. 37.01 ("A 'verdict' is a written declaration by a jury of its decision of the issue submitted to it in the case."), 37.04 (providing that after jury agrees upon verdict, verdict is read aloud in court, and if it is in proper form, no juror dissents from it, and neither party requests jury poll, verdict must be entered). But it is also true that "[v]erdicts should receive a liberal rather than a strict construction, and if the finding of the jury can be reasonably ascertained, from whatever source, the verdict should be held valid." *Ainsworth v. State*, 517 S.W.2d 274, 277 (Tex. Crim. App. 1975) (examining jury charge when determining jury's intention). Here, the corrected charge did not authorize a conviction for a lesser included offense, and therefore it is unreasonable to infer that the jury intended to find Lopez guilty of bodily injury to a child when the court did not charge it to consider this offense.[4] *See id.* In addition, when the verdict refers to the indictment, as it does

[3] The written verdict states, "We, the jury, find the Defendant, JOSE LOPEZ, ALSO KNOWN AS PEDRO LOPEZ, guilty of the offense of serious injury to a Child, as alleged in the indictment." The word "serious" is handwritten and inserted with a caret before the word "injury" and initialed by the trial judge.

[4] Lopez argues, based on his allegation that the jury did not return a verdict of serious bodily injury, that the only offense authorized by the verdict is that of injury to a child by causing bodily injury. We note that the word inadvertently omitted from the verdict form by the trial court was the word "bodily," not the word "serious." There are two offenses involving "serious injury" established in Penal Code Section 22.04(a)—serious bodily injury and serious mental injury. *See* Tex. Penal Code § 22.04(a)(1)-(3) (listing offenses for causing serious bodily injury; serious mental deficiency, impairment, or injury; or bodily injury). For all the reasons discussed, we conclude that it is reasonable to conclude that the jury intended to find Lopez guilty of serious bodily injury, not serious mental injury.

16

in this case, we must read both the indictment and the charge to determine the jury's intent. *See Lewis v. State*, 482 S.W.2d 177, 179 (Tex. Crim. App. 1972). The indictment alleged that Lopez had "intentionally and knowingly, by act, cause[d] serious bodily injury to [J.S.], a child . . . ." We conclude that when the verdict is read together with the indictment and the corrected jury charge, it is reasonable to conclude that the jury intended to find Lopez guilty of the first-degree felony of injury to a child by causing serious bodily injury, as alleged. *See id.* Consequently, we hold that the trial court did not enter a judgment different from that called for by the verdict, and thus, Lopez has shown no error by the trial court. We overrule Lopez's second issue.

In his third issue, Lopez asserts that the trial court erred by charging the jury for the range of punishment applicable to a first-degree felony, based on his contention that the trial court lacked authority to enter a judgment for the first-degree felony of serious bodily injury. Because we have concluded that the trial court did not lack authority to enter the judgment for a first-degree felony, we also conclude that the trial court did not err by charging the jury for the range of punishment applicable to a first-degree felony. We overrule Lopez's third issue.

## CONCLUSION

Having determined that the evidence is sufficient to support Lopez's conviction and that the trial court did not err by entering a judgment for the first-degree felony of serious bodily injury or charging the jury on the range of punishment for a first-degree felony, we affirm the trial court's judgment.

17

_____

David Puryear, Justice

Before Justices Puryear, Rose and Goodwin

Affirmed

Filed:   August 15, 2013

Do Not Publish